**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 10-CR-00164-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**1.   RICHARD SANTIAGO,**
2.   SILVESTRE MAYORQUI RIVERA,

    Defendants.

**DEFENDANT SANTIAGO'S MOTION TO SEVER DEFENDANTS**

Defendant Richard Santiago, by and through undersigned counsel, and pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution and Rule 14 of the Federal Rules of Criminal Procedure, hereby respectfully moves this Court for an order severing Mr. Santiago's trial from that of his co-defendant, Silvestre Mayorqui Rivera.

**I.   INTRODUCTION**

On March 24, 2010, the United States filed an indictment charging Mr. Santiago and Mr. Rivera with the murder of Manuel Torrez on April 21, 2005. The original indictment charged Mr. Santiago in the first count with Murder by a Federal Prisoner under 18 U.S.C. § 1118, and in the second count with Murder in the First Degree under 18 U.S.C. § 1111(a). The indictment charged Mr. Rivera only with the second count. The indictment includes special findings rendering the defendants death penalty eligible under 18 U.S.C. §§3591 and 3592. On February 15, 2011, the government filed a

1

superseding indictment. The substantive charges in the superseding indictment remain the same, but the superseding indictment added special findings in regard to Mr. Santiago.

On March 11, 2011, the United States filed notice of its intent to seek the death penalty against Mr. Santiago. The United States has decided not to seek the death penalty against Mr. Rivera.

The prosecution in this case alleges that Mr. Santiago and Mr. Rivera beat the decedent, causing his death. This incident occurred in a recreation yard at the Administrative-Maximum U.S. Penitentiary at Florence. As indicated by the charges, the prosecution alleges that this incident occurred with premeditation and malice aforethought.

Mr. Santiago now asks this Court to sever his case from that of Mr. Rivera. Mr. Santiago does so because the circumstances unique to this case, where the prosecution seeks to execute one defendant but not the other, create procedural issues that will cause a joint trial to be unfair to Mr. Santiago and inefficient for the Court.

## II.   ARGUMENT

### A.   RULE 14 GIVES THIS COURT DISCRETION TO SEVER DEFENDANTS WHERE IT APPEARS THAT JOINDER WILL PREJUDICE A DEFENDANT.

This Court has discretion under Fed.R.Crim.P. 14(a) to sever defendants if joinder "appears" to prejudice a defendant. Indeed, although there does exist a preference for joint trials of defendants indicted together, severance is necessary whenever a serious risk exists that joinder will compromise a specific trial right, or will affect the jury's ability to make a reliable judgment about guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). While joinder generally promotes "economy,

efficiency and... avoid[s] multiplicity of trials," *id.*, courts act impermissibly when they "secure greater speed, economy and convenience...at the price of fundamental principles of constitutional liberty." *Bruton v. United States*, 391 U.S. 123, 134-135 (1968).

Further, because this is a death penalty case, the Court must be particularly vigilant in applying severance rules because death is "profoundly different from all other penalties." *Lockett v. Ohio*, 438 U.S. 586, 605 (1978). Because of the qualitative difference between death and other penalties, *see Woodson v. North Carolina*, 428 U.S. 280, 305 (1976), the Supreme Court has demanded "a greater degree of reliability when the death sentence is imposed." *Lockett*, 438 U.S. at 604.

Accordingly, the severance calculus is somewhat changed:

> [T]he standards for severance are necessarily leavened by the fact this is a death penalty case. The threshold for determining what constitutes prejudice and when the jury's ability to render a reliable verdict is compromised is necessarily lower than in the ordinary case.

*United States v. Green*, 324 F.Supp.2d 311, 320 (D. Mass. 2004); *see also id.* at 324 ("In a death penalty case … concerns about reliability are heightened, particularly as to severance."). "Special constitutional considerations present in capital cases … may require severance in situations that would not ordinarily do so in non-capital criminal cases." *United States v. Catalan-Roman,* 376 F.Supp.2d 96, 100 (D.P.R. 2005); *see also United States v. Perez*, 299 F.Supp.2d 38, (D.Conn. 2004) (granting severance based on evidentiary concerns "given the heightened need for reliability in a death penalty trial").

### B.  MR. SANTIAGO WILL BE PREJUDICED BY JOINDER WITH HIS NON-CAPITAL CO-DEFENDANT.

The Court should sever these defendants because the mere joinder of the two co-defendants will cause serious prejudice to Mr. Santiago. A joint trial of Mr. Santiago, who faces the death penalty, with Mr. Rivera, who does not despite being charged with the exact same murder, will likely create the impression in the jury that a legal determination already took place that singled Mr. Santiago out for the death penalty. The jury will receive the clear message from the earliest moments that Mr. Santiago has been deemed most worthy of the most severe punishment and will severely prejudice Mr. Santiago at both the guilt/innocence phase as well as a the sentencing phase, should such occur.

If Mr. Santiago is tried jointly with Mr. Rivera, the jury will likely conclude that some official "sorting process" already singled out Mr. Santiago for the death penalty, and that he is somehow more culpable than Mr. Rivera. *See Green*, 324 F. Supp. 2d at 326 n. 21 ("The capital defendants argue most powerfully that if they are tried along with non-capital defendants, jurors may infer that because they have been chosen by someone (they may know it was by the government or speculate that it was by the Court) for the death penalty, and others have not, that they are more culpable than the non-capital codefendants.").

The Court can readily comprehend the impact on potential jurors when during *voir dire* the Court and counsel for Mr. Santiago are concerned only with whether the juror could impose a death sentence on Mr.Santiago and not at all concerned with whether they could do so to Mr. Rivera. Jurors will likely arrive at the faulty assumption

that the Court agrees with the "decision" that Mr. Santiago deserves death or possibly even had a role in such decision.  *See id*.

Any implication that a prosecutor pre-selected Mr. Santiago for the death penalty is impermissible.  *See Johnson v. Wainwright*, 778 F.2d 623 (11th Cir. 1985).  In *Johnson*, the court ruled that a prosecutor acts improperly when he informs the jury that his office seeks the death penalty only in a limited number of cases. *Id.* at 630. The court explained:

> A prosecutor's exercise of the discretion necessary to his office typically carries great legitimacy because of the public's belief that he is carrying out his duties with expertise and in the interest of justice. While the prosecutor's reliance on this public rust is surely proper in many instances, it is not appropriate in a death penalty proceeding where the choice of life or death has been purposely left in the first instance not with him but with the defendant's peers. By suggesting that his office had already carefully selected Johnson as one who was particularly deserving of the death penalty, the prosecutor tended to undermine the jury's perception that it had unfettered discretion to decline to impose the death penalty.

*Id*. at 630-31.

Here, the prosecution cannot avoid creating the impression that its office "carefully selected" Mr. Santiago for the death penalty if Mr. Santiago stands trial alongside Mr. Rivera against whom it declined to seek the death penalty despite both men being charged with the exact same murder, both with premeditation and malice aforethought. The fact that the U.S. Attorney does not explicitly state to the jury that it pre-selected Mr. Santiago should not matter.  The practical effect of Mr. Santiago's singled-out status is that it tends "to undermine the jury's perception that it ha[s] unfettered discretion to decline to impose the death penalty." *Id*.  Any such impression deprives Mr. Santiago of his rights to a fair determination of guilt or innocence, and to precise and individualized sentencing.  Accordingly, severance is necessary because

Mr. Santiago's unique death-eligible status presents a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

### C. THE COURT SHOULD SEVER THE DEFENDANTS BECAUSE JOINDER WILL RESULT IN A LESS EFFICIENT TRIAL.

1. A Joint Trial Will Cause Significant Problems In *Voir Dire*.

A joint trial with both a capital and a non-capital defendant in this case will cause significant problems in *voir dire*. As the Court is surely aware, there is greater incentive for Mr. Santiago to seek jurors perceived to be more advantageous at the potential penalty phase. For Mr. Rivera, however, who does not face government execution, he will be concerned solely about the guilt/innocence phase. Thus, exercise of challenges for cause will be confused, and there could be outright antagonism over the use of peremptory challenges. Further, the actual conduct of *voir dire* will be difficult as Mr. Santiago has incentive to voir dire at length about issues that could arise only at a sentencing phase, while also informing the prospective jurors about such matters that could be highly prejudicial on guilt to Mr. Rivera. Indeed, death-eligible defendants often concede guilt in *voir dire* in order to determine potential jurors' positions on the death penalty. Obviously, this would be severely prejudicial to a non-capital co-defendant who is alleged to have acted in concert with the capital co-defendant. "[T]he different trial strategies employed by counsel in approaching jury selection in a death penalty trial may in fact be sufficient on their own to justify severance where one defendant faces the death penalty and the others do not." *United States v. Basciano*, 2007 WL 3124622, at *8 (E.D.N.Y. 2007).

### 2. A Joint Trial Will Act To The Detriment Of Judicial Economy, From Motions, Through Voir Dire, And Trial.

While one of the main justifications for the preference for joint trials is judicial economy, *Zafiro*, 506 U.S. at 537, in this case judicial economy would more likely be frustrated by joinder of the two defendants. This is not a complex conspiracy or RICO case where separate trials would be unduly convoluted and time-consuming. Here, the facts expected to be established at the guilt/innocence phase of the trial are rather straightforward: Mr. Rivera and Mr. Santiago are accused of beating the decedent and causing his death. If tried jointly, however, there are myriad issues that will lengthen all aspects of the trial from motions to jury selection to evidentiary objections at trial to cross-examination of witnesses.

The mere fact of one defendant facing the death penalty will undoubtedly create significant delay, as there are many more issues to litigate pretrial in the death penalty case than in the non-death penalty case. *See United States v. Jackson*, 2003 WL 21787320, at *2 (S.D.N.Y. 2003) (recognizing that "the presence of death penalty-eligible defendants may well delay the case"); *see also id*. at *2 n.3 (noting that the fact that defendants face the death penalty "necessarily puts their case on a different, and slower, schedule, and there is no reason why the remaining defendants should be subject to abnormal and otherwise unnecessary delay" (internal citation omitted)).

As discussed above, the capital prosecution against Mr. Santiago will change and complicate the jury selection procedure. Fed.R.Crim.P. 24(b)(2) provides that in a non-capital prosecution the defense enjoys 10 peremptory challenges, while the government is limited to six. The rule permits the Court to grant additional peremptory challenges to multiple defendants. The rule does not permit a court to grant additional

peremptory challenges to the prosecution, absent an agreement between the parties. *See United States v. Gleason*, 616 F.2d 2, 29 (2nd Cir. 1979)(holding that granting prosecution additional peremptory strikes was improper). However, Rule 24(b)(1) provides the capital defendant and the government 20 peremptory challenges each. The reason for the additional challenges is to ensure that a capital jury is not tainted by unacceptable opinions with regard to the death penalty. *See United States v. Vallez*, 653F.2d 403, 405-06 (9th Cir. 1981). Rule 24 is silent, however, regarding how joined capital and non-capital defendants properly exercise their challenges. For example, non-capital defendants may not agree to the prosecution having more than 6 challenges, but because this is also a capital trial, the prosecution will have more challenges than it ordinarily would. In order for non-capital defendants to maintain their statutory advantage under Rule 24(b)(2), the government must necessarily lose its right to 20 challenges with regard to the capital defendants. Joinder will thus further engender litigation over the mere number of peremptory challenges each side – and, really, each party – will have.

In addition to recognizing the benefits of severance with regard to jury selection, courts have acknowledged that severance of a capital defendant from a non-capital co-defendant can promote overall efficiency. In *McVeigh*, then-Chief Judge Matsch recognized that severed trials could well prove to be more efficient than a joint trial:

> There are efficiencies and advantages in single focused trials. The time needed for jury selection is significantly reduced: the number of defense peremptory challenges is halved and only one defense counsel conducts voir dire questioning. It is easier to apply the rules of evidence when there is a trial of one defendant, particularly with regard to the admissibility of statements offered under Rule 801(d)(2); character evidence under Rule 404(a)(1) and proof of motive, opportunity, intent, preparation, plan, knowledge and identity under Rule 404(b). Given these considerations, it

> is far from certain that the time required for two separate trials would, in total, be substantially greater than the time required for a joint trial.

*United States v. McVeigh*, 169 F.R.D. 362, 370 (D. Colo. 1996); *see also United States v. Ayala-Lopez*, 319 F.Supp.2d 236, 239 (D.P.R. 2004) (dismissing the prosecution's judicial efficiency argument as a "non sequitur," and stating, "There are advantages and costs with respect to efficiency on both sides of the coin.  Efficiency, thus, is a double edged sword.  Capital trials involve procedures and considerations foreign to non-capital trials, *inter alia*, the additional peremptory challenges and *voir dire* questioning.").

The inefficiency of a joint trial here can be seen in the fact that counsel for Rivera will have to be present "not only for evidence not relevant to their client['s] case[], but for many weeks of jury selection, whose necessary length due to the presence of [a] defendant[] subject to the death penalty will be extended by the number of participating counsel[,]" *Jackson*,  2003 WL 21787320, at *2, all the while being paid from federal coffers.  Thus, the more efficient manner in which to proceed is to sever the trials and allow Mr. Rivera to complete his much more simplified trial first. This would eliminate all capital issues that will necessarily cause significant delay in a single, joined trial.

### III.     CONCLUSION

While federal courts generally have a preference for joint trials of properly joined defendants, the unique circumstances of this case – including the difficulties created by joinder of a capital defendant with a non-capital defendant – warrant severance of Mr. Santiago's and Mr. Rivera's trials.  As the court said in *Ayala Lopez*, "Needless to say, when balancing life and judicial economy, we refuse to tilt the balance in favor of the latter."  319 F.Supp.2d at 239.

WHEREFORE, for the aforementioned reasons and for any other reasons which may appear to this Honorable Court, Mr. Santiago respectfully requests that the Court grant this Motion and sever his trial from that of Mr. Rivera.

Respectfully submitted this 20th day of May 2011.

*/s/ Ellen M. Barry*
Ellen S. Barry
ELLEN M. BARRY, ATTTORNEY AT LAW
530 South Hewitt Street, #555
Los Angeles, CA 90013
213-621-1662Fax: 213-621-1644
ellen@ellenbarrylaw.com

*/s/ Jeffrey Pagliuca*
Jeffrey S. Pagliuca
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Telephone: (303) 831-7364
Facsimile: (303) 832-2628
jpagliuca@hmflaw.com

*Counsel for Defendant Richard Santiago*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2011, I electronically filed the foregoing **DEFENDANT SANTIAGO'S MOTION TO SEVER DEFENDANTS** with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, including the following:

AUSA Robert Mydans
Bob.mydans@usdoj.gov

AUSA Mary Jo Menendez
m.j.menendez@usdoj.gov

Jeffrey Bradford Kahan
jeffrey.kahan@usdoj.gov

David Lane
dlane@kln-law.com

Patrick Burke
Patrick-j-burke@msn.com

Kathryn J. Stimson
kathryn@stimsondefense.com

s/ Angela Duran