IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLORADO

Criminal Action No. 10-CR-00164-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. RICHARD SANTIAGO,
    AKA Chuco
2. SILVESTRE MAYORQUI RIVERA,
    AKA Chikali

    Defendants.

---

## OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS FOR SEVERANCE, DOCKET NOS. 349 & 350

COMES NOW, the United States of America, by and through undersigned counsel and files this Omnibus Response in Opposition to the Defendants' Motions for Severance. Docs. 349 (Santiago) and 350 (Rivera).

### I. RELEVANT FACTS AND PROCEDURAL HISTORY

Beginning around 8:15 a.m., April 21, 2005, the Defendants fatally attacked fellow inmate Manuel Torrez on an exercise yard at the United States Penitentiary Administrative Maximum Facility in Florence, Colorado. The killing occurred in four episodes. During the initial attack, which lasted about 86 seconds, the Defendants punched Torrez until he fell to the ground, then repeatedly kicked him. After walking a short distance from the victim, the Defendants returned to kick Torrez for another 23 seconds. Following another brief break, they kicked Torrez for 13 more seconds. The

Defendants again walked away from the victim, but Santiago returned alone to kick Torrez's unconscious body once in the chest and seven times in the head.

Responding to the scene, prison guards found Torrez lying face down in a pool of blood with severe trauma to his head and torso.  Torrez was transported to a hospital where he was pronounced dead.  A medical examiner later concluded that Torrez died as a result of skull fractures and severe brain injuries.

The evidence of the Defendants' guilt is strong, as two surveillance cameras captured them committing the murder.  Numerous staff members from the Bureau of Prisons ("BOP") can identify the Defendants' in the videos.  Furthermore, both Defendants impliedly incriminated themselves after the attack.  Immediately after the killing, BOP staff members saw Santiago attempting to wash his clothes in a holding cell toilet.  His socks and shoes were pink with diluted blood.  When asked to surrender the clothes, Santiago tried to flush them down the toilet and stated, "Fuck you, open these grills [the cell door] and I will give you some too."  Four days after the murder, Rivera commented to guards, "I know that you guys are mad at me for what I did."  He added, "While I was out at recreation, I heard that this was the first one at this facility, is that true?"

On March 24, 2010, a federal grand jury for the District of Colorado returned an indictment that charged Santiago and Rivera with the first degree murder within the special territorial jurisdiction of the United States.  18 U.S.C. § 1111.  The indictment also charged Santiago with murder by a life prisoner.[1]  18 U.S.C. § 1118.  On March 11,

---

[1]At the time of the murder, Santiago was serving a 25-year sentence for two counts of bank robbery and a life sentence for first degree murder.  Rivera was serving

2011, the government filed a notice of intent to seek the death penalty against Santiago.  Doc. 291.

On May 20, 2011, the Defendants filed Motions for Severance.  Docs 349 and 350.  This Ominibus Response in Opposition addresses both briefs.

## II. LAW REGARDING SEVERANCE OF TRIALS

Federal Rule of Criminal Procedure 8(b) provides that defendants may be tried together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed.R.Crim.P. 8(b).  "Joint trials of defendants who are indicted together are preferred because '[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"  *United States v. Hall*, 473 F.3d 1295, 1301-02 (10th Cir.2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)).

Courts construe Rule 8 broadly in favor of joinder.  *United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir.1999) (holding that the presumption of joinder "is especially strong where . . . the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve two defendants who are charged, *inter alia*, with participating in the same illegal acts.").  The preference for joint trials reflects the fact that they reduce docket congestion, conserve judicial resources, expedite the administration of justice, lessen the burden on the jury pool, and avoid the necessity of recalling witnesses. *Parker v. United States*, 404 F.2d 1193, 1196 (9th

---

a 430-month sentence for five counts of bank robbery.

Cir.1968). The interests of victims and witnesses favors joint trials, and the Supreme Court has specifically recognized the interest in sparing "victims and witnesses [from] repeat[ing] the inconvenience (and sometimes trauma) of testifying." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

Despite the preference for joint trials, a court may sever co-defendants when "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed.R.Crim.P. 14(a); *see also Zafiro v. United States*, 506 U.S. at 538 (applying Rule 14 as the standard for a severance); *United States v. Cox*, 934 F.2d 1114, 1119 (10th Cir.1991) (same). "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Because "severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case." *United States v. Hall*, 473 F.3d at 1302 (quoting *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir.1984).) The burden is not carried with a mere showing that a separate trial would offer a better chance at acquittal. *United States v. Hines*, 696 F.2d 722, 732 (10th Cir. 1982).

### III. DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN TO DEMONSTRATE PREJUDICE THAT MIGHT JUSTIFY SEVERANCE

In a collection of related but insubstantial arguments, the Defendants contend that joinder will prejudice them. Santiago and Rivera posit that there exists a judicial preference for severance of capital and noncapital defendants charged in the same

case. Doc. 349 at 2-3 & 350 at 3-5. Santiago more specifically argues that joinder with a noncapital defendant will prejudice him because the jury will surmise that the prosecution has prejudged him as the more culpable party. Doc. 340 at 4-6. Rivera takes the opposite tack, asserting that joinder will prejudice him because of the spillover effect from evidence that Santiago was serving a life sentence at the time of the murder and because the case will be tried by jurors who do not object to the death penalty. Doc. 350 at 7-11. The Defendants' claims find no support in the law or facts.

A. <u>The Law Provides No Preference for Severance of Capital and Noncapital Defendants</u>

Santiago argues that the need to ensure the reliability of death sentences requires severance of capital and noncapital defendants. Doc. 349 at 2-3. Rivera contends that a statistical analysis of the case law indicates a judicial preference for severance of such defendants. Doc. 350 at 3-5. Both arguments are contradicted by the law.

As noted above, the Supreme Court has recognized a strong preference for trying defendants who are indicted together in joint trials. *See Zafiro*, 506 U.S. at 537. "A *per se* rule requiring severance each time a capital defendant and a noncapital defendant are charged with the same crimes certainly would undermine this stated preference." *United States v. Lighty*, 616 F.3d 321, 351 (4th Cir. 2010). Indeed, the Supreme Court has simply rejected the notion that a noncapital defendant is necessarily prejudiced by joinder with a co-defendant facing the death penalty. *Buchanan v. Kentucky*, 483 U.S. 402, 418-19 (1987).

Ignoring the law's preference for joinder, the Defendants assert the existence of

a contrary presumption. But neither Defendant squarely confronts the fact that the great weight of existing authority undermines their position. Instead, Santiago retreats to an argument that the Supreme Court has demanded greater reliability when capital punishment is imposed. Doc. 349 at 3. He and Rivera both observe that "[special constitutional considerations present in capital case . . . may require severance." *Id.*; Doc. 350 at 3-4. But neither Defendant provides any hint how such "special" considerations are implicated by the facts of this case. In fact, the straightforward nature of the crime and the evidence, establish no special considerations that the Defendants could identify. Indeed, the Defendants – both long-term prisoners in the federal government's most secure prison – were caught on videotape murdering Torrez. After the killing, they made statements that incriminated themselves, but not each other.

Given their backgrounds and the strength of the evidence against them, the Defendants cannot establish a meaningful risk that joinder will result in prejudice based on comparisons between them. In short, the Defendants cannot identify any risk that they are more likely to be convicted of this murder because the jury will have the opportunity to compare them and their respective histories. If anything, joinder in this case will likely obviate inconsistent verdicts, because it will permit the jury to directly compare the Defendants' involvement in the killing and any defenses they may offer to the charges. *See United States v. Hall*, 473 F.3d at 1301-02. Because the Defendants are not known to have made extrajudicial statements incriminating one another, they cannot identify any concern that a joined trial may result in evidentiary complications that might justify severance. *Cf. United States v. Lujan*, 529 F. Supp. 2d 1315, 1324 (D.N.M. 2007) (granting severance because of concerns about the impact of anticipated

evidence, including possible Confrontation Clause violations and the spillover effect of testimony that the capital defendant had, alone, committed a double-murder).

In the absence of any specific showing of prejudice, Rivera relies on a 2004 district court decision to argue that many cases involving a combination of capital and noncapital defendants were severed before trial. Doc. 350 (citing *United States v. Lopez*, 319 F. Supp. 2d 236, 240 (D. P.R. 2004)). Rivera's data is stale and statistically insignificant, as the seven-year-old opinion refers to a total of 12 cases. More significantly, Rivera does not show that the concerns that led to severance in the underlying cases are present here. He cannot meet his burden here by demonstrating in a conclusory fashion what courts have done in inapposite cases, a fact underscored by the existence of recent cases in which courts have approved the joinder of capital and noncapital defendants. *See, e.g., In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 131-32 (2d Cir. 2008) (relied on by *United States v. Nieves*, 354 Fed. Appx. 547, 551-52 (2d Cir. 2009)); *United States v. Hartnett*, 2007 WL 1302747 (D.Ariz. May 3, 2007); *United States v. Stone*, 2006 WL 436012 (E.D.N.Y. Feb. 22, 2006). He must demonstrate actual prejudice, and his second-hand statistical analysis does not establish a serious risk that any specific trial right will be jeopardized by a joint trial in this case. *Zafiro*, 506 U.S. at 539.

The Defendants have failed to show any legal preference for severance in cases involving capital and noncapital cases, and this Court should reject any attempt to premise severance on such grounds.

B.  <u>Neither Defendant has Demonstrated Specific Prejudice that Might Merit Severance</u>

Having failed to establish a preference for severance in this case, Santiago argues that joinder will prejudice him because the jury will surmise that the prosecution has prejudged him by seeking death against him alone. Doc. 340 at 4-6. Rivera takes the opposite tack, asserting that joinder will prejudice him because of the spillover effect from evidence that Santiago was serving a life sentence at the time of the murder and because the case will be tried by jurors who do not object to the death penalty. Doc. 350 at 7-11. The Defendants' concerns are illusory: to the extent even a risk of prejudice exists, this Court may nullify it with appropriate instructions.

   1. Comparisons Between Defendants

Rivera and Santiago both complain that joinder will permit the jury to draw negative inferences about them, but their arguments should fail in light of the fact that appropriate instructions will negate the danger of prejudice.

Merely showing the possibility of "a negative spill-over effect from damaging evidence presented against co-defendants" will not justify severance. *United States v. Wacker*, 72 F.3d 1453, 1468 (10th Cir. 1995); *see also United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005) (holding severance is not warranted by a simple "complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party"). A risk of prejudice stemming from the admission of different evidence against joined co-defendants can be ameliorated by appropriate instructions. *United States v. Thompson*, 518 F.3d 832, 863 (10th Cir. 2008). Courts presume that juries adhere to such instructions. *United States v. Jones*, 530 F.3d 1292, 1303 (10th Cir. 2008).

In this case, Rivera cannot succeed in complaining that he will be prejudiced by evidence that Santiago was serving a life sentence at the time of the murder. As a factual matter, both men were serving long sentences in the nation's most secure federal prison. Rivera cannot show that the perception of his character is meaningfully diminished by association with a co-defendant who was sentenced to a life term. Given the photographic evidence of Rivera's involvement in the murder, he carries a particularly heavy burden in showing that evidence of Santiago's sentence might meaningfully impact the jury's ability to fairly assess the evidence in this case.

Santiago fares no better in arguing that he will suffer prejudice by comparison to his co-defendant, because Rivera is not facing the death penalty and the jury might therefore conclude that the government has already made an assessment of comparative culpability. Essentially the same argument was rejected by the Fourth Circuit, which held that jury instructions would obviate any concern that joinder with a noncapital co-defendant might make a capital defendant appear more culpable:

> [T]he district court's repeated instructions to the jury that it was required to assess the evidence against each defendant separately eliminated the risk that the jury would view Lighty more culpable than Flood, simply because Lighty was charged as a capital defendant. Moreover, the district court's sentencing phase instructions reminded the jury that its sentencing decision was to be guided by the district court's instructions and based on the evidence before the jury. In *United States v. Tipton*, 90 F.3d 861 (4th Cir.1996), three capital defendants sought severance at the capital phase of their joint trial, contending that the denial of severance violated their right to an individualized sentencing determination under the Eighth Amendment. *Id.* at 892. We rejected the argument, relying in large part on the district court's repeated instructions to the jury to consider the evidence against each capital defendant individually. *Id.* at 892-93. Here, the district court's cautionary instructions at both phases of the trial similarly allowed the jury to compartmentalize the evidence against Lighty only and without regard to Flood, and we assume the jury followed these instructions. *Id.* at 893.

*United States v. Lighty*, 616 F.3d at 351.  The Fourth Circuit's reasoning is sound and comports with this Circuit's reliance on jury instructions to effectively negate the danger of prejudice to joined defendants facing different evidence.  *United States v. Jones*, 530 F.3d at 1303.  This Court should therefore reject Santiago's argument.

  2. <u>Trial by a Death-Qualified Jury</u>

  Rivera complains that he cannot be fairly tried before a "death-qualified jury."  A "death-qualified jury" is one from which venire members were excluded on the basis of their inability to set aside their views about the death penalty that would prevent or substantially impair the performance of their duties in a capital trial.  *Wainwright v. Witt*, 469 U.S. 412, 424 (1985).

  Defendant Rivera's argument that he will be prejudiced by trial before such a panel is foreclosed by the Supreme Court's decision in *Buchanan v. Kentucky*:

> Where, as here, one of the joined defendants is a capital defendant and the capital-sentencing scheme requires the use of the same jury for the guilt and penalty phases of the capital defendant's trial, the interest in this scheme. . ., coupled with the [state's] interest in a joint trial, argues strongly that in favor of permitting "death qualification" of the jury. . . . [¶] [T]he particular concern about the possible effect of an "'imbalanced' jury'" in the "special context of capital sentencing," [citation] is not present with respect to the guilt and sentencing phases of a noncapital defendant in this case.  For, at the guilt phase, the jury's discretion traditionally is more channeled than at a capital-sentencing proceeding, and, at the penalty phase, the jury's sentence is limited to specific statutory sentences and is subject to review by the judge.

*Buchanan*, 483 U.S. at 419-20.

  The *Buchanan* Court rejected the argument that a death-qualified jury lacks impartiality.  *Id.* at 420; *see also Lockhart v. McCree*, 476 U.S. 162, 178 (1986) (holding that death qualification does not violate the right to an impartial jury, which consists of

nothing more than jurors who will conscientiously apply the law and find the facts). *Buchanan's* reasoning was extended by the Tenth Circuit, which held that a noncapital defendant was not deprived of an "impartial jury" because the trial court refused to empanel a separate jury, sever the trial, or allow his counsel to participate in the death-qualification process. *United States v. Sanchez*, 75 F.3d 603 (10th Cir.1996). Thus, as a matter of law, Rivera cannot identify any presumptive prejudice much less can he justify severance based on the fact that he will be tried by a death-qualified jury.

### IV. JOINDER WILL PERMIT A MORE EFFICIENT TRIAL OF THE DEFENDANTS

The Defendants claim that joinder will result in an inefficient trial. They foresee potential conflicts between themselves concerning their exercise of peremptory challenges. Specifically, they note potential disagreements about the number of strikes available to each defendant and they predict that they will employ different strategies in excusing venire members. Additionally, both Defendants assert that severance will result in a speedier trial for Rivera. Docs. 349 at 4-9 & 350 at 5-7, 11-13. The Defendants' claims of inefficiency do not merit severance.

A. <u>Jury Selection Procedure</u>

Concerns about efficiency should not, by themselves, justify severance. Even if they did, the Court can easily confront the concerns raised here about the potential for disagreements over jury selection.

The Tenth Circuit has held that severance is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United*

*States v. Hall*, 473 F.3d at 1302.  As the defendants observe, one court in this district has recognized that the complications created by joinder, can outweigh the preference for it and the efficiencies generally created by it.  *United States v. McVeigh*, 169 F.R.D. 362, 370 (D. Colo. 1996).  But the court confined its opinion to the peculiar facts before it and did not justify its decision to sever on the basis of potential inefficiency, alone. Rather, it noted that the defendants intended to offer contradictory defenses that would lead to "substantial and significant differences in the tactical approaches taken by their respective counsel.  At times they will have different positions on evidentiary objections, and different approaches to the cross-examination of the government's witnesses and in the presentation of defense witnesses." *Id.*  In view of these issues, which were found to justify severance by themselves, the court noted that any efficiencies gained through joinder would be negated.  *Id.* at 370.  The court's dicta regarding the relative inefficiency of a joined trial it had already found grounds to sever cannot provide any authority for the proposition that joinder-induced inefficiencies may justify separate trials.  The defendants' attempt to read such a proposition into the opinion should be rejected.

Even if potential inefficiency could justify severance, the Defendants do not demonstrate any likelihood of it arising here based on their prediction that joinder will require them to litigate the number of peremptory challenges available during jury selection.  The law regarding the number of available peremptory challenges is clear. In a capital case, each "side" is permitted 20 peremptory challenges.  The operative authority, Federal Rule of Criminal Procedure 24(b), specifically provides as follows:

12

> (b) Peremptory Challenges.  Each side is entitled to the number of peremptory challenges to prospective jurors specified below.  The court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly.
>> (1) Capital Case. Each side has 20 peremptory challenges when the government seeks the death penalty.
>> (2) Other Felony Case. The government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year.

The initial sentence of Rule 24(b), which refers to each "side," plainly encompasses all defendants in a particular case.  The intent to use the plain meaning of the word "side" is clearly implied by the second sentence of the paragraph, which authorizes "additional peremptory challenges to multiple defendants."  The term "side" should be interpreted in a matter consistent with the clear intention of the drafters, when the rule is considered as a whole.  *Cf. United States v. Morton*, 467 U.S. 822, 828 (1984) ("We do not, however, construe statutory phrases in isolation; we read statutes as a whole").  The Advisory Committee Notes to Rule 24 reinforce the notion that peremptory challenges are granted to sides, not to individual parties, stating,

> In capital cases the number of challenges is equalized as between the defendant and the United States so that both sides have 20 challenges, which only the defendant has at present.  While continuing the existing rule that multiple defendants are deemed a single party for purposes of challenges, the rule vests in the court discretion to allow additional peremptory challenges to multiple defendants and to permit such changes to be exercised separately or jointly.  Experience with cases involving numerous defendants indicates the desirability of this modification.

A fair reading of the notes clearly implies that the Defendants are cumulatively entitled to a total of 20 strikes as a matter of law.  *See Williamson v. United States*, 512 U.S. 594, 614-15 (1994) (Kennedy, J., conc.) (noting reliance on the Notes).

As Rule 24 provides, this Court may exercise its discretion to provide the Defendants with more strikes, but that is hardly a complication that should require severance.  The granting of additional peremptory challenges is a routine feature of capital cases, as the Southern District of West Virginia has recognized.  *See United States v. Lecco*, 2007 WL 894567, *1 (S.D. W.Va. March 21, 2007) (citing cases).  The fact that the litigants might call upon this Court to exercise its discretion under the rule does not justify severance as a matter of law or common sense.  Indeed, the specter of litigating this prosaic issue – which either Defendant could raise in a separate trial – provides no basis for severance.

The Defendants fare no better in arguing that they should receive separate trials because they will exercise peremptory jury strikes on the basis of different strategies. In support of their position, the Defendants note that one district court judge has observed that the differing jury-selection strategies of capital and noncapital defendants might justify severance.  Docs. 349 at 6 (citing *United States v. Basciano*, 2007 WL 3124622 (E.D.N.Y. Oct. 23, 2007) & 350 at 12 (same).  However, the Defendants fail to acknowledge that the court in that case ultimately declined to reach the issue. *Basciano,* at *8.  ("It is not necessary to reach that issue here, however, because when these concerns combine with a high likelihood of spillover prejudice, as in this case, they provide 'further support' for severance").  The unpublished observations of the district court are not only non-binding, they appear at odds with the Supreme Court's conclusion that a death-qualified jury does not presumptively lack impartiality.  *See Lockhart v. McCree*, 476 U.S. at 178.

More significantly, the district court's dicta overvalues peremptory challenges, which the Supreme Court has termed "auxiliary[,] unlike the right to an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000). Indeed, "without more, the loss of a peremptory challenge [does not] constitute[] a violation of the constitutional right to an impartial jury." *Id.* at 313 (internal quotations omitted). The Defendants have not shown that their potentially differing approaches to jury selection will undermine the right to an impartial jury. By extension, their speculative concern about the exercise of peremptory challenges cannot justify severance because it does not implicate the compromise of a specific trial right. *See Zafiro*, 506 U.S. at 539.

The assertions that joinder will lead to inefficient jury selection procedures should not justify severance in this case.

B.  Judicial Economy

The Defendants both argue that joinder will result in inefficiency, at least as to the trial Rivera. In essence, they both argue that joinder will elongate Rivera's trial proceedings, resulting in unnecessary expenditures for counsel's fees and the transportation of the Defendant. The Defendants also observe that some courts have found separate trials can be more efficient than joined ones. Docs. 349 at 7, 8-9 & 350 at 5-7. The arguments are without merit.

As noted above, concerns about efficiency do not, by themselves, support severance of properly joined defendants. *See United States v. Hall*, 473 F.3d at 1302. Moreover, the Defendants have failed to identify any specific concern that would support the conclusion that separate trials would be more efficient, overall. Admittedly,

a court in this district severed the trials of the defendants in the Oklahoma City bombing case, noting concerns about the length of voir dire and the admissibility of evidence in a joined trial. *McVeigh*, 169 F.R.D. at 370. Because the evidentiary issues appeared likely to complicate a joint trial, the court found that severance might actually streamline the presentation of evidence and lead to greater overall efficiency and simplicity. Likewise, a District of Puerto Rico court found – under the peculiar circumstances of the case before it – that the potential efficiencies of a combined trial did not sufficiently justify joinder. *United States v. Ayala Lopez*, 319 F. Supp. 2d 236, 240 (D.P.R. 2004) (stating that "we are not establishing a steadfast rule of general applicability, but that confronted with this particular case as presented, we find that it is in the best interest of justice that severance be granted").

Unlike the aforementioned cases, the Defendants in this one have not identified any specific evidentiary concerns that would support the conclusion that separate trials might streamline the overall process or meaningfully simplify the case. Indeed, this case will rest largely on the video evidence of the two Defendants committing the murder and does not presently involve any statements made by either Defendant that implicates the other. Severed trials would require the government to present most, if not all, of the evidence from the guilt phase in essentially the same form and taking the same amount of time, before two separately impaneled juries, while relying repeatedly on witnesses called from correctional duties at the Bureau of Prisons. While joinder may slow Rivera's trial proceedings, as compared to a severed prosecution against him alone, the Defendants have not shown that separating the two cases will lead to any greater efficiency for the government as a whole.

As such, the Court should reject argument that the interest in judicial economy should support severance in this case.

## CONCLUSION

Based on the foregoing reasoning and authority, this Court should deny the Defendants' Motions for Severance.

Dated: June 20, 2011

        Respectfully submitted,
        JOHN F. WALSH
        United States Attorney

        s/Robert E.Mydans
        ROBERT E. MYDANS
        Assistant United States Attorney
        1225 17th Street, Suite 700
        Denver, CO 80202
        303-454-0100
        Fax 303-454-0402
        Email: Bob.Mydans@usdoj.gov

        s/M.J. Menendez
        M.J. MENENDEZ
        Assistant United States Attorney
        1225 17th Street, Suite 700
        Denver, CO 80202
        303-454-0100
        Fax 303-454-0402
        Email: MJ.Menendez@usdoj.gov

        s/Jeffrey B. Kahan
        JEFFREY B. KAHAN
        Trial Attorney
        United States Department of Justice
        1331 F Street, NW; Rm. 337
        Washington, D.C. 20530
        Phone: 202-305-8910
        Fax: 202-353-9779
        Email: Jeffrey.Kahan@usdoj.gov

        Attorneys for the United States

## **CERTIFICATE OF SERVICE**

I certify that on June 20, 2011, I electronically filed the foregoing **Omnibus Response in Opposition to Motions for Severance, Docket Nos. 349 and 350** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Ellen M. Barry, Esq.
Ellen M. Barry, Attorney at Law
Ellen@ellenbarrylaw.com
Attorney for Richard Santiago

Jeffrey S. Pagliuca, Esq.
Haddon, Morgan and Foreman, P.C.
Jpagliuca@hmflaw.com
Attorney for Richard Santiago

David A. Lane, Esq.
Killmer, Lane & Newmann, LLP
dlane@kln-law.com
Attorney for Silvestre Mayorqui Rivera

Kathryn J. Stimson, Esq.
Kathryn@stimsondefense.com
Attorney for Silvestre Mayorqui Rivera

Eric K. Klein
eklein@johnson-brennan.com
Attorney for Richard Santiago

s/   Deborah Sisung_____
Deborah Sisung
United States Attorney's Office
1225 17th Street, Suite 700
Denver, CO 80202
Phone: (303) 454-0100
Fax: (303) 454-0402
deborah.sisung@usdoj.gov