**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 10-CR-00164-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **RICHARD SANTIAGO,**
2. SILVESTRE MAYORQUI RIVERA,

    Defendants.

---

**DEFENDANT SANTIAGO'S MOTION FOR PRODUCTION OF MATERIAL
AND INFORMATION CONCERNING DNA ANALYSIS**

---

    Defendant Richard Santiago, by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 16(a)(1)(E), (F), and (G); FRE 702, 703, and 705; and the Due Process Clause of the United States Constitution moves for discovery related to potential DNA evidence in this case.  Mr. Santiago states as follows:

    1.    Mr. Santiago is before the Court having been charged by superseding indictment with two counts of murder for the death of Manuel Torrez. [#267.]  The government has given notice that it intends to seek the death penalty against Mr. Santiago.  [#291.]

    2.    The government has provided in discovery a conclusory FBI forensic laboratory report indicating that DNA analysis was conducted on a shoe recovered from Mr. Santiago.  According to the report, Manuel Torrez was determined to be the major contributor to a DNA mixture on the shoe.  The FBI report provides no statistic for the

likelihood of Mr. Torrez being included and provides no actual data to show how the analyst arrived at this conclusion.

    3.    The materials and information requested herein are directly relevant to the DNA testing which the government has already undertaken. The materials and information requested herein are necessary in order for Mr. Santiago to be able to effectively investigate and prepare to present evidence relating to these issues. *See, e.g.*, *United States v. Willock*, 696 F.Supp.2d 536, 572 (D. Md. 2010) (holding that summary of expert testimony is "useless if not accompanied by 'bases and reasons' that support it"); *United States v. Caputo*, 382 F.Supp.2d 1045, 1052 (N.D. Ill. 2005) ("It is exceedingly difficult to cross-examine a scientific expert witness about the results of a scientific test without an opportunity to first review the test giving rise to the results."); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 338 (2009) (Kennedy, J., dissenting) (arguing that the defense could challenge the reliability of forensic analysis "by seeking discovery concerning the testing methods used or the qualifications of the laboratory analysts" under the Massachusetts analogue to Rule 16).

    4.    Rule 16(a)(1)(F) provides for disclosure upon a defendant's request of any scientific test if:

    (i) the item is within the government's custody or control;

    (ii) the attorney for the government knows or through due diligence could know that item exists; and

    (iii) the item is material to preparing the defense or the government intends to use the item in its case in chief at trial.

5.      Rule 16(a)(1)(G) provides for disclosure of a written summary of any expert testimony.  This summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  *Id.*

6.      The items requested are those needed by any competent expert hired to assist the defense in order to fully evaluate the evidence and claims of the prosecution witnesses as to the appropriateness, validity, accuracy and precision of any testing or conclusions.

7.      The items requested are consistent with those items that a prosecutor "should be required . . . to make available to the defense" pursuant to the ABA Criminal Justice Standards on DNA Evidence approved by the ABA House of Delegates, Standard 4.1(a), August 2006.[1]

---

[1] Standard 4.1(a) states:

**Standard 4.1 Disclosure**

(a) The prosecutor should be required, within a specified and reasonable time prior to trial, to make available to the defense the following information and material relating to DNA evidence:

(i) laboratory reports as provided in Standard 3.3;

(ii) if different from or not contained in any laboratory report, a written description of the substance of the proposed testimony of each expert, the expert's opinion, and the underlying basis of that opinion;

(iii) the laboratory case file and case notes;

(iv) a curriculum vitae for each testifying expert and for each person involved in the testing;

(v) the written material specified in Standard 3.1(a);

(vi) reports of all proficiency examinations of each testifying expert and each person involved in the testing, with further information on proficiency testing discoverable on a showing of particularized need;

(continued)

      8.      These requests are intended to apply to all serology and DNA tests that have been performed.  The requests in this motion should be addressed to any and all laboratories and experts that performed analysis in this case, including but not limited to crime laboratories, government testing facilities and any analyst or laboratory which has provided information to the government through any source, be it public agency or private person.

      9.      The following specific information and materials are requested:

(a) <u>Case file of DNA testing results</u>:  Provide a legible copy of the complete case file with all records pertaining to DNA testing in this case.  For materials that are represented in any format other than black and white copies, provide copies that are equivalent in content and quality (e.g., x-ray film copies of x-ray films, photographic quality copies of photographs, color copies of electropherograms, and CD-ROM copies of electronic data).  The records requested include, but are not limited to, the following, even if located separate from the laboratory "case file."

    1.  Handwritten bench notes;

---

(vii) the chain of custody documents specified in Standard 2.5;

(viii) all raw electronic data produced during testing;

(ix) reports of laboratory contamination and other laboratory problems affecting testing procedures or results relevant to the evaluation of the procedures and test results obtained in the case and corrective actions taken in response; and

(x) a list of collected items that there is reason to believe contained DNA evidence but have been destroyed or lost, or have otherwise become unavailable;

(xi) material or information within the prosecutor's possession or control, including laboratory information or material, that would tend to negate the guilt of the defendant or reduce the punishment of the defendant.

Available at http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_dnaevidence.html#4.1 (last visited September 24, 2012).

2. Extraction, quantitation, PCR, hybridization, capillary electrophoresis, and final analysis worksheets;

3. Worksheets and other notes used in calculating frequency statistics;

4. Any printouts of electropherograms;

5. Any printouts of electronic quantitation data;

6. Records of any errors, discrepancies, or trouble-shooting that occurred during the testing in this case, as well as an explanation of actions taken to remedy the problems—such records should include documents maintained pursuant to SWGDAM Standard 14.1.;

7. Color photographs or copies of slot blots, restriction gels, yield gels, dot strips, or autorads (if used in testing);

8. Copies of phone and other communication logs reflecting conversations by laboratory personnel internally and externally with other people about testing in this case;

9. Case notes maintained pursuant to SWGDAM Standard 11.1;

(b) <u>Data files for testing done in this case</u>:  Provide copies of all data files created and used in the course of performing DNA testing and subsequent analysis of DNA data in this case.  These files should include all data necessary to (a) independently reanalyze the raw data, and (b) reconstruct the analysis performed in this case (As a noninclusive example, if the laboratory used Genescan and Genophiler, all electronic data files from both programs should be included).  Provide these data files on a CD-ROM on which the DNA examiner has written the date he or she copied the data onto the CD-Rom, the laboratory case number, and the DNA examiner's initials.  Transmit the data intact, as originally collected, whether on a Macintosh or PC platform.  In addition, to the extent that this request pertains to commercially available software that was used <u>unmodified</u> in this case, a response to this request may simply indicate the name of the software item, the manufacturer, and the version used to create the data files.  However, in the event that data files were created with internally created software or commercial software modified in any way, provide either a copy of the modified software item or a detailed list of the changes or modifications that were made with regard to the software along with the data files. Data files should include, but are not limited to, the following:

5

1. Project files;
2. Sample files,
3. Gel files (when gels used);
4. Matrix files (including the data used to compile the matrix files);
5. Analysis parameter files;
6. Sample sheets;
7. Injection lists; and
8. Log files.

(c) <u>Statistical information relied upon to interpret tests</u>:  Identify the statistical method used to calculate probabilities in this case.  In addition, provide copies of the materials that were used or relied upon in performing any statistical analyses in this case.  These materials should include, but are not limited to, the following:

1. The complete STR database or databases on CD-ROM, in a format such that the multi-locus genotype is given for each sample tested;
2. Copies of all documents describing the source or origin of samples in STR databases used, including documents regarding the method by which samples were collected, the background and/or characteristics of the individuals who were the sources of the samples, the choice of populations and sub-populations that were sampled, and the nature of the sampling procedure used to collect the samples;
3. Copies of all documents generated by computer statistical programs (e.g., PopStats) used to aid statistical calculations in this case;
4. Allelic frequency tables relied upon; and
5. Computer data files relating to statistical analyses.

(d) <u>Laboratory procedures relied upon when performing tests</u>:  Provide legible copies of all documents that were, or are claimed to have been, followed or relied upon in executing, interpreting, and/or reporting the

DNA tests performed in the instant case. These materials should include, but are not limited to, the following:

1. Standard operating procedures of the DNA testing laboratory, including those maintained pursuant to SWGDAM Standard 9.1.1;

2. User manual for any computer statistical program (e.g. PopStats) used to aid statistical calculations in this case;

3. Quality assurance manuals, including those maintained pursuant to SWGDAM Standard 3.1.1; and

4. Quality control manuals.

(e) <u>Documentation of laboratory and analyst expertise</u>: Provide legible copies documenting how the testing laboratory meets scientific community standards and how laboratory personnel have been trained to conduct DNA testing. These materials should include, but are not limited to, the following:

1. Copies of all licenses or other certificates of accreditation held by the DNA testing laboratory;

2. Copies of all audit reports for the last five years relating to the DNA testing laboratory used in this case, including all audit documents retained pursuant to SWGDAM Standard 15.1, *et seq.*;

3. Copies of any contamination records kept by the laboratory—these materials should include (i) instances of reagent blanks and/or negative controls registering the presence of DNA and/or positive controls registering the presence of DNA other than that of the control DNA and (ii) all documents describing actions taken by the laboratory in response to contaminated controls or other forms of contamination;

4. Copies of any control or sample discrepancy logs kept by the laboratory—these materials should include: (i) the case number, (ii) laboratory number, (iii) name of the analyst, (iv) extraction/concentration method, (v) description of the discrepancy, (vi) the cause of the discrepancy, and (vii) the corrective action taken.

5. Copies of any proficiency tests that were taken by the persons who performed the DNA testing in this case—these materials

       should include (i) the complete proficiency test case file, (ii) computer data files, (iii) evaluations and/or reports by the testing agency; and (iv) records maintained pursuant to SWGDAM Standard 13.1.1;

6. Current resumes, job descriptions, and descriptions of continuing professional training for all personnel involved in handling, conducting, and/or reviewing the biological material, serological testing, and DNA testing performed in this case, including all materials maintained pursuant to SWGDAM Standard 5.1, *et seq.*;

7. A list of the last ten cases at which the persons involved with testing in this case have testified.

(f) <u>Explanation of laboratory and computer instruments relied upon to perform tests</u>:  Provide legible copies of documentation about the equipment, reagents, and testing kits used to conduct DNA testing in this case.  These materials should include, but are not limited to, the following:

1. A brief description of the kinds of forensic work done in the laboratory and a diagram of the laboratory that clearly designates the work areas for evidence storage, DNA isolation, PCR processing, and DNA typing;

2. A list of all the laboratory instruments used in the DNA testing in this case, including the name of the instrument, manufacturer, and version used;

3. A copy of the instructions provided by manufacturers of commercial tests kits, and protocols and manuals relating to the testing instruments (including user's manuals and machine-run specifications);

4. Documents regarding any modifications from the seller's specifications to any instrument (e.g. the ABI 310) or test kit along with any documentation of what, if any, validation was performed regarding such modifications;

5. Documentation of the maintenance of laboratory equipment maintained per SWGDAM Standard 10.3;

6. Materials that document any trouble-shooting or changes that were made to the genetic analyzer instrument used in the instant case, including: (i) copies of any notes, or records of

communications relating to trouble-shooting that had to be done on the instrument, including calls to technical support lines and visits to field technicians to repair the instrument; (ii) records of any changes that were made to the instrument in the course of testing samples in this case, including replacement of parts such as laser or CCD virtual camera; (iii) records of all computer resets or reboots that had to be done during the testing in the instant case, including soft resets, cold boots, and/or clear memory resets; and (iv) records of all incidents in which manual control was used to override genetic analyzer presets;

7. A list of all software programs, filters, and any "macros" used in the DNA testing in this case, including the name of the software program, manufacturer, and version used in this case—if modifications were made to commercial software's default settings or software was created in-house, these modifications and software should be provided;

8. A copy of the instructions provided by manufacturers of the software used in this case;

9. Copies of developmental validation studies pertaining to the STR DNA test performed in this case, as required by SWGDAM Guideline 8.2.1—these materials should include copies of laboratory notebooks, computer data files, unpublished scientific papers, and citations to published scientific papers;

10. Copies of any internal validation studies pertaining to the specific STR DNA test performed in this case, as required by SWGDAM Guideline 8.3.1.1—these materials should include copies of laboratory notebooks, computer data files, unpublished scientific papers, and citations to published scientific papers.

(g) <u>Information regarding evidence control procedures and current disposition of evidence</u>:  Provide legible copies of documentation about the laboratory control of evidence in this case.  These materials should include, but are not limited to, the following:

1. Copies of all chain of custody documents for each item of evidence subjected to DNA testing, starting with the first description or "log entry" for each item and continuing through to the current disposition of that item of evidence—such documentation should show (i) where and how the materials were collected, (ii) where and how the materials were stored (including temperature and type of container), (iii) the amount of

9

        evidence material which was consumed in testing, (iv) the amount of material which remains, and (v) where and how the remaining evidence is stored;

        2. Copies of the lab's internal operating procedures regarding evidence control pursuant to SWGDAM Standard 7.1, *et seq.*

(h) <u>Information about DNA testing of other individuals:</u>  Pursuant to Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), provide all results, analyses, printouts, and raw data with respect to any DNA tests performed in this case on any other individual besides Mr. Santiago.  If no testing was conducted on any other individual, indicate whether a DNA sample was taken from any other individual, and why no DNA testing was conducted in that instance.

(i) <u>Evidence of inconclusive DNA typing:</u> Pursuant to Rule 16 and *Brady v. Maryland*, for any inconclusive DNA typing results provide a particularized explanation as to why that typing result was determined to be inconclusive  (e.g. insufficient quantity of DNA, degraded DNA, inhibited PCR, etc.).

(j) <u>Serology</u>: Provide a complete copy of all laboratory protocols and records relating to any serological testing in the above captioned case, including but not limited to the following:

    1. Laboratory protocols,

    2. Laboratory notes;

    3. Photographs;

    4. Diagrams;

    5. Sketches;

    6. Bench notes;

    7. Final reports; and

    8. Draft reports.

WHEREFORE, for the above-stated reasons, Mr. Santiago requests this Court order the government to produce the requested materials.

Respectfully submitted this 24th day of September 2012.

*s/ Ellen M. Barry*_____
Ellen M. Barry
ELLEN M. BARRY, ATTORNEY AT LAW
530 South Hewitt Street, #555
Los Angeles, CA 90013
Telephone: 213-621-1662
Fax: 213-621-1644
Ellen@ellenbarrylaw.com


*s/ Jeffrey Pagliuca*_____
Jeffrey S. Pagliuca
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Telephone: 303-831-7364
Facsimile: 303-832-2628
jpagliuca@hmflaw.com


*Counsel for Defendant Richard Santiago*

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September 2012, I electronically filed the foregoing **DEFENDANT SANTIAGO'S MOTION FOR PRODUCTION OF MATERIAL AND INFORMATION CONCERNING DNA ANALYSIS** with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, including the following:

AUSA Mary Jo Menendez
m.j.menendez@usdoj.gov

AUSA Valeria Neale Spencer
Valeria.Spencer@usdoj.gov

Jeffrey Bradford Kahan
jeffrey.kahan@usdoj.gov

ATTORNEYS FOR THE GOVERNMENT

David Lane
dlane@kln-law.com

Patrick Burke
Patrick-j-burke@msn.com

Kathryn J. Stimson
kathryn@stimsondefense.com

ATTORNEYS FOR SILVESTRE MAYORQUI-RIVERA

*s/ Angela Duran*_____